255 S.W.2d 144 (1953)
STATE ex rel. KIRKS
v.
ALLEN.
No. 21865.
Kansas City Court of Appeals. Missouri.
February 2, 1953.
*145 H. K. West, Brookfield, for appellant.
J. E. Taylor, Atty. Gen. and Gilbert Lamb, Asst. Atty. Gen., for respondent.
BOUR, Commissioner.
This is a proceeding in mandamus wherein relator Kenneth Kirks seeks to compel respondent Walter Allen, as prosecuting attorney of Linn County, to file a petition in the circuit court of said county, charging relator with being a criminal sexual psychopath within the meaning of the Act providing for the detention and treatment of criminal sexual psychopaths, sections 202.700-202.770 RSMo 1949, V.A.M. S., and praying that a hearing be held to determine whether relator is such a psychopath. An alternative writ was issued to which a return was filed, and relator replied. After a trial the circuit court quashed the alternative writ and refused a peremptory writ. From such judgment relator appealed to the Supreme Court, and that court has transferred the cause to this court on jurisdictional grounds. Mo.Sup., 250 S.W.2d 348.
We deem it advisable to summarize certain provisions of the above-mentioned act before stating the facts in this case. The Act defines a "criminal sexual psychopath" and provides that when any person is charged with a criminal offense and it shall appear to the prosecuting attorney that such person is a criminal sexual psychopath the prosecuting attorney shall file in the pending criminal proceeding a petition "setting forth facts tending to show that the person named is a criminal sexual psychopath." The act further provides that when any reputable person having knowledge that an individual so charged is a criminal sexual psychopath as defined in the Act, or that such individual has committed an act or acts which indicate that he may be a criminal sexual psychopath, and so informs the prosecuting attorney of the county where the acts were committed, and the prosecuting attorney is satisfied that the allegations have merit, are based on actual knowledge and are capable of proof, then he shall prepare and file in the proper court a petition as provided in the Act. It provides for the service of the petition upon the person named, and for a hearing to determine whether such person should be medically examined; that if, upon such hearing, prima facie proof of criminal propensities to the commission of sex offenses be made, the court shall appoint qualified medical examiners to examine the person charged. The Act provides that under stated conditions the court shall dismiss the petition; that under other stated conditions the court shall order that a hearing be held on the petition; and that if the person is found to be a criminal sexual psychopath, the court may commit him to the State Hospital at Fulton for treatment or may order such person to be tried upon the criminal charges against him. The Act sets out the conditions of his release from such detention after treatment, and declares that a finding of criminal sexual psychopathy under the Act shall not constitute a defense in any criminal action. Certain provisions are set forth in full below.
The record shows that respondent is the prosecuting attorney of Linn County, and that this proceeding in mandamus was instituted in the circuit court of Linn County on May 16, 1951. Some time prior to that date relator was charged in said court with two offenses: namely, a charge of assault with intent to kill with malice aforethought, and a charge of carnal knowledge. He is awaiting trial on those charges. It appears from the pleadings and from what is entitled an "Agreed Statement of Facts" filed in the trial court, that relator's attorney delivered an affidavit and two medical reports "to the acting prosecuting attorney, C. B. Burns, before January 1, 1951, and were by him delivered to the respondent about January 1, 1951, as part of the files of the office of the prosecuting attorney of Linn County."
The affidavit was made by relator's father, M. F. Kirks, on September 1, 1950.
*146 The affiant stated that relator had confessed to ravishing a girl about 12 or 13 years of age and had confessed that he had intercourse with a child 10 years of age in the State of Iowa; that relator had been subject to mental and emotional disturbances for many years; that he had received numerous injuries to his head; that he had attempted suicide; that he was a minister by profession and his acts were not normal; that "at the time of this alleged offense with which he now stands charged," he made "no effort to hide his identity"; that his actions indicated that he was a criminal sexual psychopath and should be examined as provided for in the Criminal Sexual Psychopathic Act.
One of the medical reports delivered to respondent was signed by Dr. Edgar W. Johnson, Jr., of Kansas City, Missouri, and the other report was signed by Dr. Roy R. Haley of Brookfield, Missouri.
The report of Dr. Johnson states that he examined relator on October 17, 1950; that he found no evidence of increased intercranial pressures, and the examination did not reveal any hallucinations or delusions. The report further states that relator readily admitted "the incidents outlined in his statement concerning sexual attacks especially the one involving the 14 year old girl, which attack occurred prior to his apprehension and confinement"; that according to the patient he had several episodes in recent months which he was unable to recall; that he admitted he had contemplated suicide and had made several unsuccessful attempts; that he gave a history of having had several severe head injuries during childhood and adult life; that he also stated he had had severe headaches since his confinement, but these headaches almost disappeared following a self-inflicted head injury in his cell. The report further stated: "In summary I believe this boy could best be described as follows: 1. Marked Constitutional adequacy. 2. Suicidal. 3. Epileptiform attacks. 4. Sexual psychopathic. In my opinion this condition may or may not be related to his frequent head injuries. There is no organic evidence of any neurological disorder. I believe this boy could have another attack at any time, during which he might repeat criminal sexual attacks. In my opinion he should be confined to a mental institution."
The report of Dr. Roy R. Haley shows that he examined relator on July 7, 1950. The report is in longhand and most of it is illegible. Counsel for relator says that the words "Sexual Psychopath, Potential Suicide" are clearly legible. However, we can read the following: "Complains of severe headache * * * Saw him in jail * * * Heart, lungs, reflexes, eyes normal * * * No abnormal abdominal findings * * * Spine fracture while in tank corps * * * Also bullet wound of scalp * * * Diagnosis: Sexual phychopathPotential suicide."
After alleging certain facts set forth above, relator states in his petition that notwithstanding the filing of said affidavit and medical reports with respondent, the respondent has arbitrarily and capriciously refused to petition the circuit court for a hearing to determine whether relator is a criminal sexual psychopath; that relator believes that he is a sexual psychopath and that such condition has continued for several years and that he needs treatment; and that he has "no other or different remedy, either legal or equitable, than to seek the process of this court by mandamus to require and direct respondent to take action and file a petition as provided by law for an inquiry into the psychopathic condition of relator * * *." Copies of the affidavit of relator's father and the two medical reports were attached to the petition as exhibits.
After certain admissions, respondent alleged in his return that he had examined the affidavit and the two medical reports "and was not satisfied that the allegations in said documents had merit, nor was said respondent satisfied that the allegations in said documents were based on actual knowledge or were capable of proof"; that "after due deliberation and careful examination of the documents and investigation as to relator's habits and practices prior to his alleged offenses, as well as relator's demeanor while incarcerated awaiting trial, this respondent exercised *147 his discretion as provided in section 202.710 RSMo 1949, V.A.M.S., and decided to prosecute this relator under the criminal laws of the State for the above mentioned offenses; and that this respondent verily believes that the relator is not a criminal sexual psychopath within the meaning of the Missouri law." Respondent denied that he acted arbitrarily or capriciously in refusing to file said petition and alleged that he acted in good faith and in accordance with his oath of office in the exercise of discretion granted him under the law.
In his reply, relator reaffirmed the allegations of his petition and charged that respondent did not seek information from the persons named in the petition (relator's father and Doctors Johnson and Haley) as to the mental condition of relator; and denied that respondent acted in good faith in the discharge of his duties in the premises.
The Agreed Statement of Facts reads in part as follows: "6. That Harry L. West, attorney for the petitioner and for the defendant Kenneth Kirks in the case of State against Kenneth Kirks offered to Respondent, Walter Allen, the prosecuting attorney, to submit the Petitioner, Kenneth Kirks to an examination about the middle of January, 1951, and that the examination be made by anyone chosen or selected by the prosecuting attorney. 7. That no examination of the petitioner has been sought or procured by the prosecuting attorney. That the prosecuting attorney did not talk to or inquire of Doctor Johnson or Doctor Haley or to the father of the petitioner, and that the prosecuting attorney on February 19, 1951, declined to accept the offer made by (sic) the prosecuting attorney for an examination."
The only testimony introduced at the trial was that of relator's attorney H. K. West, who was called as a witness for respondent. He testified that "Dr. Haley examined Mr. Kirks as a practicing physician in the general practice at Brookfield, Linn County, he's been the county physician for some time, examined Mr. Kirks as such, and I do not know whether he is a specialist in nervous and mental diseases or not * * *." He further testified that Dr. Edgar W. Johnson, Jr., was engaged in the practice of medicine and surgery in Kansas City, Missouri; that he did not know whether Dr. Johnson had specialized in mental diseases; and continued: "As to Dr. Haley, I asked that he make a physical examination * * * with reference to his headaches, there had been an attempt at suicide. * * *
"Q. These headaches were brought to your attention by himself? A. They were brought to attention by the defendant, his mother and his father, and by his wife and by hearsay from the family physician.
"Q. Do you know who is the family physician? A. I don't recall his name, but he offices with Dr. Johnson."
Relator's sole contention on appeal is that the refusal of respondent to proceed against him under the provisions of the Criminal Sexual Psychopathic Act was capricious and arbitrary and constituted an abuse of the discretion which the Act vested in respondent as prosecuting attorney.
Acts providing for the detention and treatment of criminal sexual psychopaths are a recent development in the law and fewer than twenty states have enacted such legislation. See State ex rel. Sweezer v. Green, 360 Mo. 1249, 232 S.W.2d 897, 24 A.L.R.2d 340, where the constitutionality of the Missouri Act was upheld as against several contentions. We have found no case, and counsel have cited none, involving the question presented for our determination.
Section 202.700 of the Act reads as follows:
"All persons suffering from a mental disorder and not insane or feebleminded, which mental disorder has existed for a period of not less than one year immediately prior to the filing of the petition provided for in section 202.710 coupled with criminal propensities to the commission of sex offenses, and who may be considered dangerous to others, are hereby declared to be `criminal sexual psychopaths.'"
*148 Section 202.710 provides:
"1. When any person is charged with a criminal offense and it shall appear to the prosecuting or circuit attorney as the case may be of the county wherein such person is so charged that such person is a criminal sexual psychopath, then the prosecuting or circuit attorney of such county shall file with the clerk of the court in the same proceeding wherein such person stands charged with criminal offense, a petition in writing setting forth facts tending to show that the person named is a criminal sexual psychopath.
"2. When any reputable person having knowledge that an individual who is charged with a criminal offense is a criminal sexual psychopath as defined in sections 202.700 to 202.770, or that any such individual has committed an act or acts which indicate that he may be a criminal sexual psychopath, and so informs the prosecuting or circuit attorney as the case may be, of the county where the act or acts were committed, and the prosecuting or circuit attorney is satisfied that the allegations have merit, are based on actual knowledge and are capable of proof, he shall prepare a petition verified upon his information and belief, in sufficient detail so that the person complained against will be reasonably informed of the charges against him, which petition shall be filed with the clerk of the court of proper jurisdiction."
We think the word "shall" as used in section 202.710, subd. 2, should not be construed as a mandatory direction to the prosecuting officer regardless of the sufficiency of the information furnished him by a "reputable person." "That the word `shall,' as generally used, is mandatory may be conceded, but it is a cardinal rule that `the intention of an act will prevail over the literal sense of its terms' (Suth.St.Const. § 219), otherwise it might lead to absurd consequences * * *." State ex inf. Folk v. Talty, 166 Mo. 529, 559, 66 S.W. 361, 369. Webster's New International Dictionary, 2d Ed., defines the word "satisfy" as follows: "To free from doubt, suspense or uncertainty; to give assurance to; to set at rest the mind of; to convince." In Detroit & I. R. Co. v. Wahl, 27 Ohio App. 9, 160 N.E. 638, 639, where the court had under consideration the meaning of the words "to satisfy," as used in a statute, it was said: "`To satisfy' means to free the mind from doubt and uncertainty, and signifies something more than a belief founded on a preponderance of the evidence." See also Seago v. New York Central Railroad Co., 349 Mo. 1249, 164 S.W.2d 336, 147 A.L.R. 372.
In our opinion section 202.710, subd. 2, should be construed as meaning that when the prosecuting officer is satisfied (1) that the information furnished him tends to show that the person in question is a criminal sexual psychopath within the meaning of section 202.700; (2) that the statements of the informant are based on actual knowledge; and (3) that the alleged facts are capable of proof, he is required to prepare and file in the court where the criminal proceeding is pending a petition as provided for in said section. In determining whether the alleged facts tend to show that the person charged with the criminal offense is a criminal sexual psychopath, the prosecuting officer must be guided by section 202.700, which defines such a psychopath. Since he is charged with the duty of determining whether to institute such a proceeding, he must make a decision one way or the other. It seems to us that the performance of this duty of necessity involves the exercise of discretion. Cf. State v. Davis, Mo.Sup., 251 S.W.2d 610, 612. Of course, such discretion must be exercised according to the law, in good faith and not arbitrarily.
As indicated, it is conceded that respondent received the affidavit of relator's father and the two medical reports about January 1, 1951. In his affidavit, relator's father stated that his son had confessed to ravishing a girl 12 or 13 years of age, and had confessed he had intercourse with a child 10 years of age in the State of Iowa; but *149 he did not state the names of the girls or the dates or places of the alleged acts. The time and place of the alleged head injuries do not appear in the affidavit, and the affiant did not state when or where his son attempted to commit suicide. Furthermore, there is nothing in the affidavit to show that he had personal knowledge of the alleged acts and occurrences. The affidavit contains a general statement to the effect that relator had been subject to mental and emotional disturbances for many years, and the remaining statements are merely conclusions as to relator's condition. As to the report of Dr. Johnson, he reached the conclusion that relator was a "sexual psychopath" but it is evident he based his conclusion upon statements made by relator. As to that part of Dr. Haley's report which we can decipher, it is sufficient to say that it affords no basis for the doctor's conclusion"Sexual PsychopathPotential Suicide."
We think it is clear that neither the affidavit nor the medical reports set forth facts tending to show that for more than a year relator had been suffering from such a "mental disorder" as made him a criminal sexual psychopath within the meaning of section 202.700. The factual statements of the informants, if proved to be correct, were not sufficient to enable the respondent to prepare a petition which would meet the requirements of the Act. It has been held that a petition alleging that the accused was a criminal sexual psychopath, but which was not supported by allegations of a factual nature tending to show the correctness of the alleged conclusions, was fatally defective and rendered all subsequent proceedings invalid. People v. Artinian, 320 Mich. 441, 445, 31 N.W.2d 688, 689. See also State ex rel. Sweezer v. Green, supra, 232 S.W.2d loc. cit. 899. Furthermore, there is nothing in the record to show that the statements in the affidavit and the report of Dr. Johnson concerning the alleged sex deviations with young children "are based on personal knowledge and are capable of proof." As stated, it appears from the "Agreed Statement of Facts" that respondent "did not talk to or inquire of Dr. Johnson or Dr. Haley or to the father of the petitioner." We cannot say that he acted arbitrarily or capriciously in failing to do so. It also appears from the Stipulation that relator's attorney offered "to submit the petitioner * * * to an examination" by a physician selected and appointed by respondent. The Act does not provide for any such procedure. It does not require the prosecuting attorney to appoint a physician to examine the person charged with a criminal offense for the purpose of determining whether he is a criminal sexual psychopath. Having examined the record, we conclude that relator failed to prove that respondent's discretion was exercised contrary to law, or that it was exercised capriciously and arbitrarily.
What we have said disposes of the only question presented for our determination. The judgment should be affirmed.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the Court. The judgment is affirmed.
All concur.